**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____

| | |
|---|---|
| SCOTT L. LEVENTHAL, a resident of the State of Georgia | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| JOSEPH KAVANA, a resident of the State of Florida, | ) ) ) |
| Defendant. | ) ) |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Scott L. Leventhal ("Leventhal"), acting by and through its undersigned counsel, submits this Verified Complaint for Declaratory and Injunctive Relief against the defendant, Joseph Kavana ("Kavana"), and hereby alleges the following based upon personal knowledge:

**SUMMARY OF THE ACTION**

1. Plaintiff and Defendant are each 50% shareholders in The Trillist Companies, Inc., a Delaware corporation (the "Company" or "Trillist"). An actual case or controversy has arisen respecting: (a) Plaintiff's management of the daily business affairs of Company; and (b) the parties' rights and obligations under their Shareholders' Agreement dated June 1, 2014 (as amended or modified, the "Shareholders' Agreement"), as well as Trillist's Articles of Incorporation, By-Laws, and Resolutions.

2. Within the past forty-five days, Defendant, acting through two separate attorneys, has repeatedly threatened Plaintiff with litigation and now claims to have removed Plaintiff as the Operating Officer and Chief Executive Officer of the Company. Further, Kavana is demanding

that Leventhal step aside and take no further actions on behalf of the Company. Plaintiff asserts that Defendant's threats and demands lack legal or equitable merit and therefore seeks a declaration of the parties' rights and obligations so that Plaintiff can determine how to proceed with the management of the Company

## THE PARTIES

3. Plaintiff resides in Georgia and has been a party to the Shareholders' Agreement since June 1, 2014.

4. Defendant resides in Florida and has been a party to the Shareholders' Agreement since June 1, 2014.

## JURISDICTION AND VENUE

5. Plaintiff seeks relief under the Declaratory Judgement Act, 28 U.S.C. §§ 2201-2002, and Rule 57, of the Federal Rules of Civil Procedure.[1]

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and Defendant reside in different states and the value of the contractual rights in dispute exceeds $75,000.

7. The Court has personal jurisdiction and venue over Defendant, who resides in Florida, and has agreed in Section 11.3 of the Shareholders' Agreement, that any claims seeking equitable relief may be brought in the United States District Court for the Southern District of Florida.

---

[1] Because the operative shareholders' agreement between Plaintiff and Defendant is controlled by the laws of the State of Delaware, this Complaint is also brought by Plaintiff against Defendant pursuant to the Delaware Declaratory Judgment Act, 10 Del. C. § 6501, *et seq*.

## **SUBSTANTIVE ALLEGATIONS**

A. **Background**

8. Trillist is a Delaware corporation, headquartered in Atlanta, Georgia. It operates as a real estate investment and development joint venture. Through its subsidiaries, the Company provides real estate development, property management, and real estate investment management and advisory services.

9. As stated in the Shareholders' Agreement, Leventhal and Kavana founded the Company as a joint venture to develop "YOO" branded residential projects in major metropolitan cites in the United States that could be developed and licensed under that certain Territorial Development Agreement dated May 22, 2013 (the "Territorial Development Agreement") by and between KGH International Development, LLC, a Florida limited liability company ("KGH") and YOO Design Studio Limited, a Company incorporated in the United Kingdom ("YOO").

10. Plaintiff and Defendant are the only parties to the Shareholders' Agreement generally.

11. KGH is an affiliate of, and solely controlled by, Defendant.

12. KGH executed the Shareholders' Agreement by limited joinder for the sole purpose of providing certain representations, covenants, and agreements concerning its Territorial Development Agreement with YOO as set forth in *inter alia* Section 10.4 and Section 10.5 of the Shareholders' Agreement.[2]

---

[2] While the signature page to the Shareholders' Agreement for KGH references Sections 10.3 and 10.4, such references are scriveners' errors and in fact the appropriate references are to Sections 10.4 and 10.5 of the Shareholders' Agreement.

13. The exclusive ability to use YOO's design services and branding for Company projects pursuant to the Territorial Development Agreement was a valuable and material inducement for Plaintiff to enter the Shareholders' Agreement. As stated in Section 10.4:

(a) Unless otherwise Approved by the Shareholders, each of the Projects shall be developed by the Company through Tier Companies and shall be designed by Yoo or its Affiliate and shall utilize the Yoo Marks and be branded and marketed under the 'yoo' brand in accordance with the Territorial Development Agreement. [Defendant] shall cause KGH to grant, and KGH agrees to grant, to the Project Companies the right to license the Yoo Marks, together with any other rights available to KGH under the agreements contemplated under the Territorial Development Agreement pursuant to, and in accordance with, the Territorial Development Agreement.

(b) Each Shareholder covenants and agrees to keep the Territorial Development Agreement and any and all other documents in full force and effect and not permit a default thereunder and will not allow any material amendments or modifications to the Territorial Development Agreement without the Approval of the Shareholders.

14. With the exception of two specifically identified development projects in South Florida, Sections 10.4(c) and 10.4(d) generally restrict Defendant and KGH from using KGH's Territorial Development Agreement to develop YOO branded residential properties that would compete with the business of the Company.

15. Likewise, Section 10.2 of the Shareholders' Agreement contains a right of first opportunity provision generally requiring each Shareholder and their affiliates to present to the other Shareholder all opportunities to develop "luxury residential rental apartments", if at all, through the Company and its subsidiaries.

16. Section 10.2 contains further restrictions upon Plaintiff regarding the development of a specific, proposed development project located at 1138 Peachtree Street, Atlanta, Georgia (the "1138 Project").

17. In relevant part, Section 10.2 of the Shareholders' Agreement states:

> The Shareholders for themselves and for their respective Affiliates covenant and agree that all opportunities for the construction and development of [Potential Projects] shall exclusively be developed by the Company through the Tier Companies. Each Shareholder or his Affiliate shall present to the other Shareholder each Potential Project for the Shareholder's consideration to be developed by the Company through the Tier Companies…The non-presenting Shareholder shall have twenty (20) days following receipt of notice from the presenting Shareholder…to determine if the Potential Project is suitable for development directly through the Company or, if the Potential Project is a Third Party Project, then for the Company to form a venture with the Third Party Project developer to develop the Potential Project under the 'yoo' brand…If the non-presenting Shareholder elects not to proceed with the Potential Project, then the other Shareholder or his Affiliate shall be permitted to develop the Potential Project independent of the participation by the Company or the non-presenting Shareholder, but shall not have the right to utilize the Yoo Marks in connection therewith; provided, however, under no circumstances shall any Shareholder be permitted to develop a Potential Project within a five (5) mile radius of any Project that is owned, directly or indirectly, by the Company and that has not yet achieved Stabilization. Notwithstanding anything to the contrary contained in this Section 10.2, in the event that the [1138 Project] that is Controlled by an Affiliate of [Plaintiff] is not Approved by [Defendant] for development by the Company, [Plaintiff] and his Affiliates shall have the right to proceed with the development of the 1138 Project independent from any participation of the Company and [Defendant] or his Affiliates and without regard to its proximity to any other Project owned by a Project Company; provided, however, the 1138 Project shall not bear the Yoo Marks. Notwithstanding the aforesaid, if construction financing for the Yoo on the Park Project shall have been secured on or before December 31, 2014, it will be a condition to [Plaintiff's] and his Affiliates rights to construct the 1138 Project that construction on the 1138 Project shall not commence prior to the date which is six (6) months after the closing of construction financing for the Yoo on the Park Project, and the lease up of the 1138 Project shall not commence prior to the earlier of (i) twelve (12) months following the Substantial Completion of the Yoo on the Park Project, or (ii) Stabilization of the Yoo on the Park Project.

18. Because the value of the Company to Plaintiff is directly related to KGH's ability to provide and maintain the Territorial Development Agreement with YOO, Plaintiff specifically negotiated for the provision found in Section 10.4(e) of the Shareholders' Agreement, which would relieve Plaintiff of his Section 10.2 covenants, restrictions, and obligations in the event that KGH

could no longer make the Territorial Development Agreement available. Specifically, Section 10.4(e) of the Shareholders' Agreement states:

> (e) In addition to any other rights and remedies set forth in Section 11.2, any breach of either this Section 10.4 or Section 10.5(a) which continues for more than seven (7) days after notice from [Plaintiff] to [Defendant] of the default and a request for the cure of such default if such default is curable, shall ***automatically result in the termination of the obligations of [Plaintiff] under Section 10.2***. (Emphasis added).

19. Plaintiff's obligations under Section 10.2 of the Shareholder's Agreement automatically terminate if Plaintiff provides written notice to Defendant that Section 10.4 or Section 10.5 of the Shareholders' Agreement have been breached, and the breach continues for more than seven (7) days after the notice.

20. Section 10.4(b) of the Shareholders' Agreement is breached if a default occurs under the Territorial Development Agreement, or if the Territorial Development Agreement is no longer in full force and effect.

21. Section 10.5(a) of the Shareholders' Agreement is breached if Defendant fails to cause KGH's entire interest in the Territorial Development Agreement to be transferred and assigned to the Company after the achievement of a certain "Performance Test." Specifically, Section 10.5 of the Shareholders' Agreement states in relevant part: "[f]ollowing the achievement of the Performance Test, [Defendant] shall cause KGH to transfer and assign, and KGH agrees to transfer and assign, its entire interest in and to the Territorial Development Agreement to the Company, and the Company shall assume all obligations thereunder."

22. The Territorial Development Agreement was executed between KGH and YOO nearly one year prior to the execution of the Shareholders' Agreement.

23. On information and belief, at all times since the execution of the Shareholders' Agreement, the only two parties to the Territorial Development Agreement have been KGH and YOO.

24. Plaintiff is not personally a party to the Territorial Development Agreement.

25. Defendant is not personally a party to the Territorial Development Agreement.

26. The Company is not a party to the Territorial Development Agreement.

27. KGH has never transferred or assigned its entire interest in the Territorial Development Agreement to the Company, or attempted to do so.

**B. Approval of the Pursuit of the 1138 Project**

28. Following the execution of the Shareholders' Agreement, the Shareholders' approved the pursuit of the development of the 1138 Project, which is described in Section 10.2 of the Shareholders' Agreement above; however, despite the commercially reasonable efforts of Plaintiff, the Company was unable to proceed with the development of the 1138 Project because it did not raise sufficient capital as contemplated by the business plan set forth in the Shareholders' Agreement.

29. As a result, neither the Company nor its subsidiary ever acquired any real property interest in the 1138 Project and cannot continue to fund its pursuit of the 1138 Project.

**C. The Termination of the Territorial Development Agreement**

30. The Territorial Development Agreement was executed by KGH on or about May 22, 2013.

31. Under its terms, the Territorial Development Agreement expired on December 31, 2018, and is no longer in full force and effect because KGH failed to exercise the first of two

options, each for successive five-year periods, to extend the Territorial Development Agreement.[3]

32. Plaintiff has not done any act that would cause KGH to default under the Territorial Development Agreement.

33. At all relevant times, Plaintiff has directed the Company to work towards development of Projects and Potential Projects that would have been consistent with KGH's rights and duties under the Territorial Development Agreement.

34. Section 10.4(b) of the Shareholders' Agreement was breached when the Territorial Development Agreement was allowed to lapse without KGH exercising the option to renew or renegotiating the terms of the agreement.

35. By failing to cause KGH to exercise the option to renew the Territorial Development Agreement, Defendant has damaged Plaintiff and the business of the Company.

36. Because KGH never assigned or transferred its entire right to the Territorial Development Agreement to the Company, neither Plaintiff nor the Company could exercise KGH's right of renewal or negotiate for an extension of the agreement.

**D. The Present Dispute**

*Defendant's Threats Concerning Plaintiff's Section 10.2 Obligations*

37. On February 10, 2020, Plaintiff delivered to Defendant written notice of breach of the covenants set forth in, among other things, Section 10.4(b) of the Shareholders' Agreement

---

[3] Among the conditions precedent to the automatic extension of each of the five-year extension options set forth in the Territorial Development Agreement, KGH was obligated to have caused the commencement of development of at least five (5) rental apartment buildings during the immediately preceding five-year period which did not occur. Plaintiff has not been provided with any evidence to support any efforts made by KGH or Defendant to renegotiate the terms of the extension options in order to avoid the expiration of the Territorial Development Agreement.

relating to the expiration of the Territorial Development Agreement ("Plaintiff's Notice of Default").

38. Plaintiff's Notice of Default included a seven (7)-day right to cure the default in accordance with Section 10.4(e) of the Shareholders' Agreement.

39. Defendant did not cure, or cause to be cured, the default within the seven (7) day period. In fact, the default has never been cured.

40. In response to Plaintiff's Notice of Default, Defendant Kavana—acting through his prior counsel—threatened Leventhal with legal action as follows:

> Any attempt by Leventhal to violate Section 11.2 *(sic)* will be fully prosecuted via immediate equitable injunction. Specifically, [Plaintiff is] placed on notice that any effort by [Plaintiff], individually or through an affiliate try to 'develop a Potential Project within a five (5) mile radius of any Project that is owned, directly or indirectly, by the Company that has not yet reached stabilization,' notably the Yoo on the Park project, will be enjoined via legal recourse. To be clear, this extends to the Initial Project being pursued by the [Company] at 1138 Peachtree Street as set for the *(sic)* Section 7 of the Business Plan…Failure to disclose any potential joint venture partner would be a knowingly fraudulent act on [Plaintiff's] part.

41. As a result of the uncured breach of Section 10.4 of the Shareholders' Agreement, Plaintiff's duty to provide Defendant a "Right of First Opportunity" under Section 10.2 of the Shareholders' Agreement has automatically terminated and the Company does not have any right to exclusively develop any Potential Project affiliated with Plaintiff. Further, Plaintiff is no longer bound by any of the other restrictions or covenants under Section 10.2 of the Shareholders' Agreement.

### *Defendant's Abusive Record Requests*

42. On December 23, 2020, Defendant's former counsel sent a demand for Defendant's exercise of Defendant's audit rights under the Shareholders' Agreement and an exceedingly broad production of financial documents dating back to the inception of the Company

within ten days of the letter. In his December 23, 2020 demand, counsel threatened immediate arbitration and litigation without first pursuing the negotiation and mediation aspects of the parties' alternative dispute resolution agreement, which could have helped resolve matters amicably.

43. On January 6, 2021, Plaintiff responded to counsel's demand and, *inter alia*, consented to Defendant's audit and inspection of the Company's records, but qualified that any costs of such audit to be borne by the Company would require a capital call from the Shareholders, and further limited the audit review period to be consistent with Plaintiff's understanding of Delaware's law concerning the applicable statute of limitations and the doctrine of laches.

44. Plaintiff's January 6, 2021 response to counsel included the production of the financial statements of the Company and its wholly and partially owned subsidiaries prepared in accordance with generally accepted accounting principles.

45. All of the foregoing financial statements delivered by Plaintiff to Defendant constituted confidential information and trade secrets under the express terms of the Shareholders' Agreement. *See* Section 10.6. Upon information and belief, following receipt of the confidential financial statements from Levanthal, Kavana, or someone acting on Defendant Kavana's behalf, misappropriated the confidential financial information, in whole or in part, and revealed it to one or more third parties.

46. On January 20, 2021, Defendant, through his current counsel, sent Plaintiff a letter demanding, *inter alia*, a complete forensic audit of the books and records of the Company and its subsidiaries. Defendant also demanded access to all of the Company's bank accounts. In the letter, Defendant twice threatens to bring legal action against Plaintiff in "a court in the Southern District of Florida" if Defendant's demands were not met unconditionally.

47. On January 26, 2021, Defendant sent Plaintiff another letter demanding, *inter alia*, that Plaintiff produce to Defendant twenty-seven (27) different categories of documents related to, among other things, the Company, and he demanded production before February 10, 2020. In the letter, Defendant again twice threatens to bring legal action against Plaintiff in the Southern District of Florida.

48. Defendant's records requests improperly demand strict compliance on short notice.

49. Defendant, through his current counsel, has made multiple other demands and threats that, if his unilaterally imposed deadlines were not strictly complied with, Defendant would initiate litigation without additional notice and Plaintiff would find unfavorable treatment before "a south Florida court."

50. At 4:30 p.m. on February 1, 2021, Plaintiff, through counsel, sent Defendant a response to his January 20, 2021 letter. Plaintiff's response, *inter alia*, agreed to Defendant's audit request and agreed to provide Defendant with access to the Company's bank accounts. In addition, Plaintiff began a rolling production of documents that were responsive to Defendant's requests.

51. Each of Defendant's demands for the Company's records have been directed to Plaintiff individually, and not to the Company.

52. Section 12.2 of the Shareholders Agreement provides, in pertinent part "…in the event of direct conflict between the provisions of [the Shareholders' Agreement] and the mandatory provisions of [Del. Code Ann. Tit. 8] and the Certificate of Incorporation, [Del. Code Ann. Tit. 8] and the Certificate Incorporation, in that order, shall control."

53. 8 Del. C. § 220 is the section of the Delaware General Corporation Law governing shareholder demands to inspect a corporation's books and records. 8 Del. C. § 220(c) provides, in

pertinent part that "The [Delaware] Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought." (emphasis added).

54. On February 10, 2021, Plaintiff's counsel again sent a letter offering to facilitate Defendant's request for an audit and asking for dates when Defendant's auditors could visit the Company's headquarters. Plaintiff further asked Defendant for information needed to gain access for Defendant to the Company's bank account information online. To date, Defendant has not responded to either request.

### *Defendant's Improper Threat to Remove Plaintiff as the Company's "Operating Officer" and "Chief Executive Officer"*

55. As contemplated by the Shareholders' Agreement, Plaintiff and Defendant, acting in their capacity as the Company's Board of Directors, prepared and adopted the Company's By-Laws.

56. Plaintiff cannot currently be removed from the Board of Directors of the Company pursuant to the express terms of the Shareholders' Agreement.

57. Pursuant to the Shareholders' Agreement, Defendant is the Chairman of the Company's Board of Directors.

58. Pursuant to the Shareholders' Agreement, Plaintiff is the Operating Officer, President, Chief Executive Officer, and Secretary of the Company.

59. In the same resolution that adopts the By-Laws of the Company, the parties appointed Plaintiff the President, Chief Executive Officer, and Secretary of the Company.

60. The By-Laws vest the President of the Company with the sole responsibility to manage the business and affairs of the Company. In his role as President, Plaintiff manages the day-to-day operations of the Company, and he has done so since the inception of the Company.

61. Neither the Shareholders' Agreement nor the By-Laws vest any specific power, privilege, responsibility, rights, or duties upon the Chief Executive Officer. In fact, the By-Laws do not identify a chief executive officer position.

62. Section 5.3(c) of the Shareholders' Agreement provides the method by which the Company's Operating Officer can be replaced. If the Company's Operating Officer is replaced, the other Shareholder automatically becomes the new Operating Officer and the *title* of CEO transfers to the new Operating Officer as well.

63. Section 5.3(c) does not control how the Company's President, Secretary, or a member of the Company's Board of Directors, can be removed.

64. On February 11, 2021, Defendant's counsel sent a letter stating that Plaintiff would receive a written notice removing him as Operating Officer and Chief Executive Officer of the Company and demanding, *inter alia*, that "[Plaintiff] must immediately cease to act for or on behalf of [the Company], its subsidiaries and any of the Project or Tier Companies, with respect to any matters that were entrusted to [Plaintiff] as an officer of [the Company] under the Shareholders' Agreement, including but not limited to §§ 5.3(a)–(b) of the Shareholders' Agreement."

65. Defendant's improper demand letter does not cite any justification for exercising a Shareholder's right to remove Plaintiff as the Operating Officer.

66. Notwithstanding Defendant's representations, as of the time of this filing, Plaintiff has not received the alleged notice. Nevertheless, Defendant is demanding that Plaintiff voluntarily step down from his position in the Company.

67. Assuming *arguendo* Defendant had justification or even technical authority to remove Plaintiff as Operating Officer and CEO of the Company, the attempt to do so would be inequitable, and it would nevertheless fail to remove Plaintiff as President, Secretary, or a member of the Company's Board of Directors.

68. Plaintiff cannot cease acting on behalf of the Company because, as President, he is charged with managing the day-to-day operations of the Company and its subsidiaries.

69. All conditions precedent to the commencement of this action have been performed, or have been waived or excused.

**CLAIMS FOR RELIEF**

**CLAIM I**
**(Declaratory Judgment – Breach of <u>Section 10.4(b)</u>)**

70. Plaintiff incorporates by reference and realleges paragraphs 1-69 as though fully set forth herein.

71. An actual, present and justiciable controversy of sufficient immediacy has arisen between Plaintiff and Defendant concerning the rights and obligations of Plaintiff following the breach of <u>Section 10.4(b)</u> of the Shareholders' Agreement.

72. Plaintiff seeks a declaratory judgment that <u>Section 10.4(b)</u> of the Shareholders' Agreement was breached when KGH failed to exercise the option to maintain the Territorial Development Agreement in full force and effect.

Fox Rothschild LLP

73. Plaintiff further seeks a declaratory judgment that the breach of Section 10.4 of the Shareholders' Agreement results in the automatic termination of Plaintiff's covenants, obligations, and restrictions under Section 10.2 of the Shareholders' Agreement pursuant to Section 10.4(e) of the Shareholders' Agreement.

74. Unless and until this Court declares the parties' rights and obligations as requested in this Claim, Plaintiff remains uncertain concerning his ability to proceed with certain development opportunities that would otherwise be offered to Defendant, for development by the Company, pursuant to Section 10.2 of the Shareholders' Agreement.

75. WHEREFORE, Plaintiff respectfully requests that this Court:

  A. Enter judgment according to the declaratory relief sought in this Claim;

  B. Award Plaintiff the reasonable costs and fees costs incurred securing this declaratory judgment as permitted in Section 11.5 of the Shareholders' Agreement; and

  C. Grant such other and further relief as this Court may deem just and proper.

## CLAIM II
**(Declaratory Judgment That Defendant is Bound by the Confidentiality Provisions Contained in the Shareholders Agreement Relating to, Among Others, Business Records)**

76. Plaintiff incorporates by reference and realleges paragraphs 1-69 as though fully set forth herein.

77. Plaintiff has reason to believe that Defendant may be delivering confidential business information, including financial information belonging to the Company and its subsidiaries, to unauthorized third parties in violation of Section 10.6 of the Shareholders' Agreement.

78. An actual, present and justiciable controversy of sufficient immediacy has arisen between Plaintiff and Defendant concerning Defendant's obligation to maintain the confidentiality

of, among other things the financial and other confidential business information of the Company and its subsidiaries.

79. Plaintiff seeks a declaratory judgment from this Court that Defendant is obligated to keep the Company's financial and business information confidential and may not disclose such information to any third party.

80. WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Enter judgment according to the declaratory relief sought in this Claim;

    B. Award Plaintiff the reasonable costs and fees costs incurred securing this declaratory judgment as permitted in Section 11.5 of the Shareholders' Agreement; and

    C. Granting such other and further relief as this Court may deem just and proper.

### CLAIM III
**(Declaratory Judgment That Defendant Cannot Remove Plaintiff as President, Secretary, and Member of the Board of Directors of the Company)**

81. Plaintiff incorporates by reference and realleges paragraphs 1-69 as though fully set forth herein.

82. An actual, present and justiciable controversy of sufficient immediacy has arisen between Plaintiff and Defendant concerning Defendant's ability to expand the rights afforded equally to the Shareholders pursuant to Section 5.3(c) of the Shareholders' Agreement insofar as Defendant is attempting to use the provision to remove Plaintiff from his positions as the Company's President and Secretary, and as a member of the Company's Board of Directors.

83. Plaintiff seeks a declaratory judgment from this Court that Defendant may not utilize Section 5.4(c) of the Shareholder's Agreement to remove Plaintiff from his positions as the Company's President or Secretary, or as a member of the Company's Board of Directors and may

not prevent Plaintiff from continuing to manage the day-to-day operations of the Company in his role as President in accordance with the Company's By-Laws.

84. WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Enter judgment according to the declaratory relief sought in this Claim;

    B. Award Plaintiff the reasonable costs and fees costs incurred securing this declaratory judgment as permitted in Section 11.5 of the Shareholders' Agreement; and

    C. Granting such other and further relief as this Court may deem just and proper.

Dated: February 12, 2021

    Respectfully submitted,

    **FOX ROTHSCHILD LLP**
    *Counsel for Plaintiff*
    One Biscayne Tower, Suite 2750
    2 South Biscayne Blvd.
    Miami, Florida 33131
    Telephone: (305) 442-6547

    By: /s/*Joseph DeMaria*
    **JOSEPH A. DEMARIA, B.C.S.**
    Florida Bar No. 764711
    Email: JDeMaria@FoxRothschild.com
    **ADAM J. LAMB**
    Florida Bar No.: 899046
    Email: alamb@FoxRothschild.com

    Sec. Email: mmiller-hayle@foxrothschild.com

119552711.v1