# EXHIBIT A

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**18105244**

Mary Staley Clark - 28
MAY 26, 2021 01:11 PM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

CHOATE CONSTRUCTION COMPANY,   )
                                            )
       Plaintiff,   )
                                            )
v.   )   Civil Action No.:   05-1-6700
                                            )   18-1-5244
INTERFINANCIAL MIDTOWN, INC.,   )
PIEDMONT FOUNTAINS, LLC, and SCOTT L.   )
LEVENTHAL,   )
                                            )
       Defendants.   )

## <u>ORDER APPOINTING RECEIVER</u>

       This matter is before the Court on Plaintiff Choate Construction Company's ("Choate") Renewed Emergency Motion for Appointment of a Special Master/Auditor and Receiver. A hearing on Plaintiff's Motion was held on May 11, 2021, which all parties attended and for which all parties received proper notice. Having considered the Choate's Motion, the parties' arguments and Briefs, and the evidence presented and all pleading of record in both Civil Action Nos. 05-1-6700 and 18-1-5244, the Court makes the following findings of fact and conclusions of law:

1. On November 21, 2016, this Court in the matter styled <u>Choate Construction Company v. Interfinancial Midtown, Inc. et. al.</u>, CAFN: 005-1-6700-48, entered a Final Judgment (the "Choate II Final Judgment") against Defendant Scott L. Leventhal ("Leventhal") personally for manipulating the various businesses he owned and controlled to perpetrate a scheme of fraudulent transfers to avoid paying monies owed to Choate. (<u>See</u> Exhibit P-1; <u>see also</u> <u>Interfinancial Midtown, Inc. et. Al. v. Choate Construction Company</u>, 343 Ga. App. 793, 794 (2017)). The amount of the Choate II Final Judgment entered against Leventhal was $1,772,158.15 (inclusive of $40,300 in punitive damages) plus post-judgment interest accruing at the legal rate from the date of the Final Judgment until paid in full. (<u>See id.</u>).

2. Leventhal has not paid Choate the amount due under the Choate II Final Judgment and post-judgment interest continues to accrue at the applicable legal rate. As of the hearing date in this matter, the amount of due under the Choate II Final Judgment with accrued interest exceeded $2.2 million. (See Choate's Brief in Support of its Renewed Emergency Motion for Appointment of Special Master/Auditor and Receiver ("Choate's Brief") at p. 1).

3. Since entry of the Choate II Final Judgment, Choate has pursued post-judgment discovery and employed available legal remedies in an attempt to collect from Leventhal, but those remedies have been ineffective. (See Choate's Reply Brief at p. 8-9 and Exhibits 2-6 thereto; see also Exhibits P-23-P-26).

4. Leventhal's assets, including his interests in, and income from, companies he owns or controls, are chargeable with payment of the Choate II Final Judgment.

5. Leventhal, both for himself and for the companies he owns, manages, and controls, has repeatedly withheld relevant information from Choate and intentionally misrepresented and misled both Choate and the Court at to what assets he possesses for satisfaction the Choate II Final Judgment, rendering Choate's efforts to employ its legal remedies meaningless. (See Exhibits P-2, P-3, P-4, P-6-P11, and P-13 at ¶4 and Exhibit 1). Specifically, the evidentiary record demonstrates that:

    a. **Leventhal Lied to Choate About his Assets in Response to Post-Judgment Discovery.**

        i. On July 2, 2018, Leventhal testified under oath in verified responses to Choate's Interrogatories that the only assets that he possessed with a fair market value of more than $5,000.00 were a Rolex Watch, a Cadillac Escalade, and real estate at 5887 Riverstone Circle, Atlanta, Georgia 30339. (See Exhibit P-2 at p. 9). Leventhal also produced personal financial statements to Choate in response to its requests for documents representing that as of December 31, 2017, Leventhal's liabilities (excluding the Choate II

Final Judgment) exceeded his assets by more than $600,000.00 (i.e. that he was "balance sheet insolvent"). (<u>See</u> Exhibit P-3 at p. 13).

ii. Leventhal deliberately withheld production of consolidated financial statements that he prepared and provided to banks and lenders to obtain credit, specifically Bank of the Ozarks, and that contradicted his sworn testimony to Choate about his available assets. (<u>See</u> Choate's Motion; <u>see also</u> Exhibit P-4).

iii. In contrast to his interrogatory responses and the personal financial statements he produced to Choate, the consolidated financial statements that Leventhal issued in April 2018 reflected his net worth as of December 31, 2017 to be $6,302,253.00 – even after accounting for payment of the Choate II Final Judgment.  (<u>See</u> Exhibit P-4 at p. 22-23).  Unlike the personal financial statement that he produced to Choate for the same period, Leventhal in his consolidated financial statements specifically included the Choate II Final Judgment as a contingent liability and accounted for its payment out of the pool of consolidated assets.  (<u>Id.</u> at p. 23, 28-29).

iv. While Leventhal argues that the consolidated financial statements reflect the assets of independent companies and not his personal assets, Leventhal repeatedly represented in the consolidated financial statements at the time they were issued that they, "present fairly, in all material respects, *my* consolidated position … and the consolidated results of *my* operations and *my* cash flows." (<u>Id.</u> at p.1, 8, 13, 18).

b. **Leventhal Lied to Choate to Hide Salary Payments that He Was Making to Himself from Trillist that Choate Could Have Garnished.**

i. On April 9, 2020, Leventhal as President and CEO of The Trillist Companies, Inc. represented under penalty of perjury in a Schedule of

3

Average Monthly Payroll Costs submitted as part of a Paycheck Protection Program ("PPP") loan application that his Actual Gross Wages as an employee of The Trillist Companies, Inc. for the period from January 1, 2019 through December 31, 2019, were $187,499.88.  (Exhibit P-13 at ¶ 4 & Ex. 1, p. 5, 8).

ii.   The CARES SBA-PPP: Employee Detail From 01/01/19 To: 12/31/19 that was also submitted by Leventhal under penalty of perjury along with the same PPP loan application further evidences that his salary was paid by The Trillist Companies, Inc. to Leventhal from April 2019-August 2019.  (Exhibit P-13 at ¶ 4 & Ex. 1, p. 5, 11).

iii.   Even though Trillist was paying Leventhal a salary, Trillist, whose day-to-day operations are run by Leventhal as its CEO/COO, did not produce responsive documents reflecting its payment of any salary to Leventhal in response to Choate's post-judgment requests.  In fact, in both May 2019 and June 2019, Trillist specifically told both Choate and the Court that it did not have any documents reflecting payments to Leventhal.  (Exhibit P-10 and P-11).

6.   Leventhal has also been dissipating assets charged with payment of the Choate II Final Judgment by continuing to draw on a $1,000,000.00 revolving line of credit ("Blue Horseshoe LOC") that he issued to himself through Blue Horseshoe, LLC, which he owns and controls.  (Exhibit P-22). According to his General Ledgers, Leventhal since entry of the Choate II Final Judgment has continued to draw hundreds of thousands of dollars against the Blue Horseshoe LOC without making any payments and despite being in default under the terms of the Blue Horseshoe LOC. (See Exhibit P-6 and P-22).  Furthermore, under the terms of the line of credit, Blue Horseshoe can setoff any property of Leventhal in Lender's possession – which should otherwise be distributed to Choate pursuant to its charging order - against amounts owed to it under the Blue Horseshoe LOC.

4

(See Exhibit P-22).  After setting off the debt, Leventhal can continue to draw on the revolving line of credit as he has done all along without making any distributions out of Blue Horseshoe to avoid paying Choate.

7. Leventhal's business partner in The Trillist Companies, Inc., Joseph Kavana, recently asserted a counterclaim against him that that seeks to remove Leventhal as CEO/COO of Trillist for allegedly breaching their Shareholders' Agreement by, amongst other things, "[operating] Trillist as a sole proprietorship, unlawfully paying himself (and others) millions of dollars while defaulting on numerous debt obligations, blocking Mr. Kavana from accessing Trillist's bank accounts, withholding key financial documents and making irreversible changes to Trillist's organizational structure." (Exhibit P-13, ¶ 5 & Ex. 2).

8. Additionally, on May 7, 2021, Leventhal was sued by KGH International, LLC, in Florida state court for breach of fiduciary duty for allegedly engaging in a scheme to divert assets from Choate by transferring them to The Trillist Companies, Inc. and TPKG 13th Street Sponsor, LLC.  (See Choate's Supplemental Brief in Support of its Renewed Emergency Motion for Appointment of Special Master/Auditor and Receiver).

9. Leventhal's established record in this case of manipulating the businesses that he owns and controls to engage in fraudulent transfers to avoid paying Choate, his ongoing misrepresentations about his available assets in post-judgment discovery to evade and render meaningless Choate's legal remedies, the lawsuits that he is embroiled in with Mr. Kavana suggesting the possibility that he is diverting assets into the companies he controls to avoid paying Choate, and his ongoing actions to dissipate of his assets and avoid making distributions that would be subject to Choate's charging order by incurring debts to the companies he owns, manages, and controls (specifically, Blue Horseshoe Investments, LLC) all constitute extraordinary circumstances and give rise to a manifest danger of continued loss, destruction, and dissipation of and material injury to Choate and Choate's interests in Leventhal's assets.  See D.C. Micro Development, Inc. v. Lang, 259 Ga. App. 611, 578

S.E.2d 251 (2003); <u>Lemans Associates Limited Partnership v. Lemans Apartments</u>, 268 Ga. 396, 489 S.E.2d 831 (1997).

10. The record also reflects an imminent and urgent need for the appointment of a receiver because Leventhal is actively marketing and on the cusp of selling two of Trillist's primary assets, the Yoo on the Park project and property located at 1122 Crescent Avenue, Atlanta, GA, in which he holds an interest and stands personally to benefit financially from their sale through his ownership and control of The Trillist Companies, Inc., Tivoli Investment Holdings, LLC, and Blue Horseshoe Investments, LLC.  (<u>See</u> Choate's Renewed Motion, at Exhibit 5-8; Choate's Reply Brief; Exhibits P-13 at ¶ 6, Ex. 3, p. 192 and P-16-P-19).

11. The Yoo on the Park project as of the time of the hearing was already under a Letter of Intent ("LOI") with a potential buyer.  (<u>See</u> Choate's Reply Brief).

12. Proceeds from the sale of the Yoo on the Park that are to be distributed to Leventhal through his ownership of Blue Horseshoe Investments, LLC and The Trillist Companies, Inc. are chargeable with payment of the Choate II Final Judgment.

13. Leventhal in his consolidated financial statements for December 31, 2017, held out to banks and lenders that his interests in Trillist's Yoo on the Park project and its property located at 1122 Crescent Avenue, Atlanta, GA, were chargeable with the Choate II Final Judgment.  (Exhibit P-4 at p. 23).

14. O.C.G.A. § 9-8-3 authorizes the appointment of a receiver, "to take possession of and hold, subject to the direction of the court, any assets charged with the payment of debts where there is manifest danger of loss, destruction or material injury to those interested."

15. Additionally, in fraudulent transfer cases such as this, O.C.G.A. § 18-2-77 broadly authorizes the Court to appoint a receiver "to take charge … of other property of the transferee [i.e. Leventhal]" and to grant "any other relief the circumstances may require."

16. The appointment of a receiver is appropriate where the person who is managing the property seems inimical to its best interests and where their actions have the effect of rendering any remedy at law

meaningless.  <u>D.C. Micro Development, Inc. v. Lang</u>, 259 Ga. App. 611, 578 S.E.2d 251 (2003);
Warner v. Warner, 237 Ga. 462 (1976).

17. Further, this Court has broad discretion to decide whether the circumstances are sufficiently clear
and urgent enough to warrant a receiver even though the facts relevant to the determination are in
conflict.  Nayyar v. Bhatia 348 Ga. App. 789 (2019).  Evidence, "suggesting the **possibility** that
[assets are] being diverted and that assets might be dissipated before the case can be resolved," has
been held to be sufficient to support the appointment of a receiver.  <u>D.C. Micro Development, Inc.</u>
<u>v. Lang</u>, 259 Ga. App. 611, 578 S.E.2d 251 (2003).

18. Leventhal's argument that the Notice of Appeal of this Court's Order Appointing a Special
Master/Auditor deprives this Court of jurisdiction to appoint a receiver is rejected.  It is well-
established that "[a] notice of appeal divests the trial court of jurisdiction to supplement, amend,
alter, or modify the judgment while the appeal of that judgment remains pending.  However . . . .
[t]he notice of appeal does not deprive the trial court of jurisdiction as to other matters in the same
case not affecting the judgment on appeal."  <u>Fred Jones Enterprises, LLC v. Williams</u>, 331 Ga. App.
481, 483 (2015) (citations and quotations omitted).  Georgia law draws a sharp distinction between
the powers and authority of Special Masters and Receivers.  <u>A&M Hosps., LLC v. Alimchandani</u>,
351 Ga. App. 310, 314 (2019), <u>reconsideration denied</u> (July 2, 2019), <u>cert. denied</u> (Feb. 10, 2020)
(other citations omitted).  The appointment of a receiver is entirely different relief that was not
granted in the Order Appointing a Special Master that is on appeal.  This Court therefore is not
deprived of jurisdiction to appoint a receiver by Leventhal's appeal.

19. The *proposed* orders submitted by Judge Bodiford in his role as special master for purposes of post-
judgment discovery following the June 4, 2019, hearing on the parties' discovery motions were
never entered by the Court and are of no force or effect.

20. Leventhal's argument that appointment of a receiver is barred by res judicata is rejected.  Res
judicata does not preclude Choate from seeking post-judgment remedies in collection.  Further,
Leventhal confuses res judicata with the related doctrine of collateral estoppel, which "precludes

the re-adjudication of an *issue*"—as opposed to a claim—"that has previously been litigated and adjudicated on the merits." <u>Waldroup v. Greene Cty. Hosp. Auth.</u>, 265 Ga. 864, 867 (1995). Because the appointment of a receiver is a *remedy*, not a separate cause of action, the appropriateness of appointing a receiver is a question of *issue preclusion*, not *claim preclusion*. Collateral estoppel differs from res judicata in one critical respect: collateral estoppel "precludes only those issues ***that were actually litigated and decided*** in the previous action, or that necessarily had to be decided in order for the previous judgment to have been rendered." *Id.* (emphasis added). The court in the 05 Case did not appoint a Receiver, or rule on any request for the appointment of a Receiver, to take charge of Leventhal's assets. Thus, there is no collateral estoppel—particularly where the facts that underlie Choate's request did not exist while the 05 Case was pending.

Given these findings of fact and conclusions of law and for good cause shown, the Court concludes that, pursuant to the separate and independent statutory grounds of O.C.G.A. §§ 9-8-1, 9-8-3, and 18-2-77, the appointment of a receiver to marshal, preserve, and provide oversight of Leventhal's assets charged with payment of the Choate II Final Judgment is necessary to protect Choate's rights and to prevent manifest and imminent loss, destruction, and/or dissipation of such assets of Leventhal. The Court further concludes that immediate and irreparable injury may result to Choate in the event a receiver is not appointed to oversee and preserve all such assets of Leventhal. THEREFORE, THE COURT HEREBY **GRANTS** Choate's Motion for the appointment of a receiver and ORDERS the following:

1. This Court hereby takes exclusive jurisdiction and possession of the assets ("Receivership Assets"), of whatever kind and wherever situated, of Defendant Scott L. Leventhal.

2. Until further Order of this Court, **S. Gregory Hays**, (hereinafter the "Receiver") at **Hays Financial Consulting, LLC**, is hereby appointed to serve without bond as receiver for the estate of Defendant Scott L. Leventhal ("Receivership Estate").

## I.      Asset Freeze & Injunction

3. Except as otherwise specified herein and as necessary for the Receiver to carry out his powers and

duties, all Receivership Assets are frozen until further order of this Court. Defendant Leventhal and all other persons, businesses, financial institutions, and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, withdrawing, setting off, receiving, changing, selling, pledging, assigning, liquidating, encumbering, or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds or in the possession or held or paid for the benefit of Leventhal by any family member, relative, officer, director, partner, employee, business, or other agent or affiliate of Defendant Leventhal.

4. Leventhal shall be further enjoined from taking any action or making any decision without the prior written approval of the Receiver that may affect or impact any Receivership Assets or the Receivership Estate.

5. Leventhal shall be further enjoined from transferring any funds or directing or approving the transfer of any funds into or out of any bank account, investment account, or other account that he controls without notifying the Receiver and obtaining the Receiver's prior written consent to the transfer of funds.

## II.    General Powers and Duties of Receiver.

6. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by Leventhal with respect to the Receivership Assets under applicable state and federal law and under any governing charters, by-laws, articles, contracts, and/or agreements, in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of O.C.G.A §§ 9-8-1, 9-8-3, and 18-2-77.

7. No person, other than the Receiver, shall possess any authority to act by or on behalf of the

Receivership Estate.

8. In addition to the specific provisions in Sections III through XIII below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all Receivership Assets, including but not limited to, including, but not limited to, property interests, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, ownership interests, stocks, membership interests, partnership interests, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Leventhal owns, possesses, has a beneficial interest in, or controls directly or indirectly;

B. To communicate directly with and coordinate and cooperate with Special Master/Auditor Patrick Braley in identifying the nature, location, and value of all Receivership Assets;

C. To require the production by Defendant Leventhal and any affiliated business entity owned, managed, or controlled by Defendant Leventhal of any documents, financial and accounting records, shareholders' agreements, membership agreements, partnership agreements, employment records, tax returns, financial statements, computer files, computer databases, and any and all other documents and records evidencing, relating, or pertaining to any assets chargeable with satisfaction of the Final Judgment and which are to be provided or paid to the Receiver under this Order;

D. To take custody, control and possession and to the turnover of all Receivership Assets and records relevant thereto from Leventhal or any other person or entity in possession of the same, including, but not limited to, property interests, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, ownership interests, stocks, membership interests, partnership interests, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Leventhal owns, possesses, has a beneficial interest in, or controls directly or indirectly; to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto;

E. To exercise all voting rights and other rights possessed by Leventhal under any stockholders' agreement, membership agreement, partnership agreement, governing charters, by-laws, or other similar agreements;

F. To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Assets, pending further Order of this Court;

G. To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

H.  To open bank accounts, to close bank accounts and to change the names of any signatories on such accounts as the Receiver deems appropriate in his sole discretion;

I.  To take any action which, prior to the entry of this Order, could have been taken by Leventhal or his managers, consultants, trustees, and agents;

J.  To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

K.  To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

L.  To issue subpoenas for documents and testimony consistent with the Georgia Rules of Civil Procedure;

M.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

N.  To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate;

O.  To oversee and exercise approval authority over any decision or action by Leventhal which may directly or indirectly impact the Receivership Assets or Receivership Estate;

P.  To oversee and exercise approval authority all transfers of funds by Leventhal from any bank account that he owns or controls to or from any family member, significant other, or business entity that he owns, has an interest in, or controls;

Q.  To render reports to the Court as set forth in Section XI below and as otherwise directed or requested by the Court;

R.  To make payments or distribute Receivership Assets to Choate pursuant to any levy, garnishment, charging order, or other legal remedy issued by Choate to the Receiver for satisfaction of the Choate II Final Judgment;

S.  To communicate directly with all banks and financial institutions to ensure that no distribution or transfer of Receivership Assets is made by Leventhal (personally or as the authorized representative of a Leventhal controlled company) without notice to and the express approval and consent of the Receiver;

T.  To liquidate Receivership Assets for purposes of payment of the Choate II Final Judgment with the approval of the Court;

U.  To approve a reasonable budget for living expenses and to pay such amounts to Leventhal

11

out of the Receivership Estate;

V. To petition the Court to expand the receivership to include the assets of other persons, businesses, or entities to the extent the Receiver reasonably believes that such assets should be added to the Receivership Estate; and

W. To take such other action as may be approved by the Court.

### III. Access to Information

9. Leventhal and his employers, affiliated companies, subsidiaries, joint venture partners, related companies, and any officers, managers, employees, agents, representatives, attorneys, accountants, banks, contractors, subcontractors of each, and all who claim under them, and all other non-parties who have been served with post-judgment discovery in this action by Choate Construction Company, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, Leventhal and/or all Receivership Assets; such information shall include but not be limited to all instruments, papers, documents, records, bank accounts, trust accounts, deposit accounts, saving accounts, money market accounts, and all other demand deposit accounts, inventory, supplies, reservation lists, owners' lists, association records, computer files, computer databases, sales brochures, sales and marketing materials, club records, and any and all other documents and tangible things evidencing or relating to any Receivership Assets.

10. Within three (3) days of the entry of this Order, Leventhal shall turn over to the Receiver all documents and information relating to the sale of the Yoo on the Park and the property located at 1122 Crescent Avenue, Atlanta, Georgia and his direct and indirect interests in any of the proceeds to be generated from the sale of those properties by The Trillist Companies, Inc.

11. Within ten (10) days of the entry of this Order, Leventhal shall file with the Court and serve upon the Receiver and Choate a sworn statement, and accounting, with complete documentation,

covering the period from January 1, 2019 to the present:

> A.  Of all Receivership Assets, wherever located, held by or in the name of Leventhal, or in which he, directly or indirectly, has or had any beneficial interest, or over which he maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, furniture, gold or other precious metals, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of him, directly or indirectly, or over which he maintained or maintains and/or exercised or exercises any direct or indirect control, or in which he had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

> B.  Identifying every account at every bank, brokerage or other financial institution: (a) over which Leventhal has signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, Leventhal;

> C.  Identifying all credit, bank, charge, debit or other deferred payment cards issued to or used by Leventhal, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

> D.  Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

> E.  Of all expenditures exceeding $1,000 made by Leventhal, including those made on his behalf by any person or entity; and

> F.  Of all transfers of assets made Leventhal.

12. Within ten (10) days of the entry of this Order, Leventhal shall provide to the Receiver and Choate copies of Leventhal's unredacted copies of federal and state income tax returns for taxable years 2018-present with all relevant and necessary underlying documentation.

13. Within ten (10) days of the entry of this Order, Leventhal shall provide to the Receiver and Choate copies of all personal and consolidated financial statements of Leventhal with all relevant and necessary underlying documentation.

14. Within ten (10) days of the entry of this Order, Leventhal shall provide to the Receiver and Choate

copies of financial statements or other documents provided to any bank, investor, or lender from 2018 to present to demonstrate his assets and net worth for purposes of obtaining credit or an investment.

15. Leventhal shall answer under oath to the Receiver all questions which the Receiver may put to him and produce all documents as required by the Receiver regarding the business of Leventhal and the Receivership Assets, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Choate.

16. Leventhal is required to assist the Receiver in fulfilling his duties and obligations. As such, he must respond promptly and truthfully to all requests for information and documents from the Receiver.

## IV.    Turnover of Assets and Access to Books, Records and Accounts

17. The Receiver is authorized to take immediate possession of all Receivership Assets of any kind and wherever situated, including but not limited to, including, but not limited to, property interests, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, ownership interests, stocks, membership interests, partnership interests, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Leventhal owns, possesses, has a beneficial interest in, or controls directly or indirectly. Leventhal and all other persons and entities having control, custody or possession of any Receivership Assets are hereby directed to turn such property over to the Receiver.

18. The Receiver is authorized to take immediate possession of any and all account usernames and passwords, books and records, bank account, investment account, or other financial account information, and all other documents or instruments relating to Leventhal and the Receivership Assets. Leventhal and all other persons and entities having control, custody or possession of any account usernames and passwords, books and records, bank accounts or other financial accounts,

and all other documents or instruments relating to Leventhal and the Receivership Assets are hereby directed to turn the same over to the Receiver.  The Receiver is entitled to change any usernames or passwords for any bank account, investment account, or other financial account relating to the Receivership Assets.

19. Leventhal, as well as his agents, servants, employees, attorneys, businesses, and any persons or entities acting for or on behalf of Leventhal, and any persons receiving notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of Leventhal are hereby directed to deliver the same to the Receiver, his agents and/or employees.

20. All business entities, banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of Leventhal that receive actual notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise shall:

    A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Leventhal except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self- help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Choate a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice;

    D.    To update that statement at least monthly; and,

E.      Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

21. The Receiver is authorized to take immediate possession of all personal property of Leventhal, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment. Leventhal and all other persons and entities having control, custody or possession of any such property are hereby directed to turn such property over to the Receiver.

22. The Receiver is authorized to take immediate possession of all real property of Leventhal, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing or erasing anything on such premises. Leventhal and all other persons and entities having control, custody or possession of any such property are hereby directed to turn such property over to the Receiver.

23. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. Leventhal, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their

possession during the term of the receivership.

24. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of Leventhal, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

25. Upon the request of the Receiver, local sheriffs and law enforcement is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

### VI. Notice to Third Parties

26. The Receiver shall promptly give notice of his appointment to all known banks, investors, financial institutions, businesses, officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of Leventhal, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to Leventhal shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if Leventhal had received such payment.

28. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or Choate.

29. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail

which is related, directly or indirectly, to the business, operations or activities of any of Leventhal (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, Leventhal. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. Leventhal shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of Leventhal, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by Leventhal. Leventhal shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

30. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Leventhal shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.   Injunction Against Interference with Receiver

31. Leventhal and all persons, financial institutions, businesses, and entities receiving notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of

18

impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.     Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendants, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

D.     Make any payment or transfer of funds by or on behalf of Defendant Leventhal without providing notice and obtaining the express written approval of the Receiver; or,

E.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

32. Leventhal and all persons, financial institutions, businesses, and entities receiving notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise shall fully cooperate with and assist the Receiver in the performance of his duties.

33. The Receiver shall promptly notify the Court and Choate's counsel of any failure or apparent failure of Leventhal or any persons, financial institutions, businesses, and entities to comply in any way with the terms of this Order.

## VIII. <u>Managing Assets</u>

34. For the Receivership Estate, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

35. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Scott L. Leventhal" together with the name of the action.

36. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Assets, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Assets.  The Receiver, with approval of the Court, may also transfer, liquidate, compromise, or otherwise dispose of any Receivership Assets for purposes of satisfying the Choate II Final Judgment.

37. The Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate. The Receiver, with approval of the Court, may also exercise these powers for satisfaction of the Choate II Final Judgment, and with due regard to the realization of the true and proper value of such real property.

38. The Receiver is authorized to take all actions to manage, maintain, and/or wind- down business operations of the Receivership Estate, including making legally required payments to creditors (including Choate), employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

39. The Receiver shall not be required to file tax returns on behalf of the Receivership Estate. Leventhal shall be responsible for filing all tax returns in the ordinary course of business, and to the extent taxes are due shall be responsible for notifying the Receiver and requesting payment from the Receivership Estate.

## IX. **Insurance**

40. Given the urgency of the situation to appoint a Receiver, the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the assets and the Receivership Estate. Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he/it can confirm that such insurance is in place or acquire the appropriate insurance. The Receiver will make it apriority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the Plaintiff, Defendant and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

41. Leventhal is ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information.  Leventhal is ordered: (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

42. Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following: (1) copies of all insurance policies including any riders, endorsements and applications with  respect to policies related to the Receiver Estate, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies. Policies shall be endorsed by Leventhal naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the

type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

43. The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the assets of the Receivership.

## X.  Liability of Receiver

44. Until further Order of this Court, the Receiver shall not be required to post bond in accordance with O.C.G.A. § 9-8-10 or give an undertaking of any type in connection with his fiduciary obligations in this matter.

45. The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

46. Except for an act of gross negligence or willful misconduct, the Receiver and all persons engaged or employed by him shall not be liable for any loss or damage incurred by the parties, or any other person by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

47. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

48. In the event the Receiver decides to resign, the Receiver shall first give written notice to Choate's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XI.  **Recommendations and Reports**

49. Within fourteen (14) days of the entry date of this Order, the Receiver shall file a status report with the Court. The status report will include a summary of receivership activities to date. It will also include a proposed plan for administering the receivership going forward.

50. Within sixty (60) days after the entry of this Order and quarterly thereafter, the Receiver shall file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

51. The Quarterly Status Report shall contain the following:

    A.    A summary of the operations of the Receiver;

    B.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

    C.    A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

    D.    A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

    E.    A list of all known creditors with their addresses and the amounts of their claims;

    F.    The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

    G.    The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

52. Absent the express approval of the Court, the Receiver's fees—including all fees and costs for the Receiver and others retained to assist in the administration of the Receivership Estate—are capped

at $75,000 during the initial 60-day period following entry of this Order. Further, fee limitations, will be set by the Court after the Receiver submits the first status report.

### XII.    Fees, Expenses and Accountings

53. The Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

54. Subject to Paragraph 55 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.

55. Subject to the limitations in Paragraph 54 above, the Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate. Such compensation shall require the prior approval of the Court.  The Receiver will be paid pursuant to O.C.G.A. § 9-8-13(c).

56. The Receiver is authorized to render a billing statement each month for all reasonable and necessary fees and expenses incurred by the Receiver in discharging his duties under this Order, which billing statement shall be provided to counsel for Defendant Leventhal and Plaintiff Choate. Such parties shall have a period of five (5) business days after receipt of such billing statement to review and object, thereafter the Receiver shall be entitled to pay himself from the funds on hand in the Receivership Estate, provided there are sufficient funds in such accounts to allow such payment. If the funds in such account are insufficient, Plaintiff Choate shall be required to pay the Receiver, provided, however, any such amounts paid shall be added to and recoverable as part of the Choate II Final Judgment against Defendant Leventhal.

### XIII.   **Miscellaneous**

57. The Receiver is authorized to communicate with all persons, entities and the attorneys for such persons and entities as he deems appropriate to inform them of the status of this matter and the financial condition of the Receivership Estate.

58. This Order shall remain in full force and effect until further order of this Court.

59. A failure by Leventhal to fully cooperate with the Receiver or otherwise comply with this Order shall be under penalty of contempt of court, and the Receiver may request supplemental authority from this Court upon proper motion, if necessary, to obtain the cooperation of the Leventhal or any other persons or entities acting on behalf of or for the Leventhal, to comply fully and completely with this Order.

So Ordered this _27_ day of May 2021.

_____
Honorable Mary Staley Clark
Superior Court of Cobb County, Georgia

S

25

Order Prepared and Presented by:
**HUDSON LAMBERT PARROTT WALKER, LLC**

_____

KEVIN H. HUDSON
Georgia Bar No. 374630
WILLIAM C. HAYES
Georgia Bar No. 362412

3575 Piedmont Road, Suite 850
Atlanta, Georgia 30305
Telephone:    (404) 554-8183
Facsimile:    (404) 554-8171
E-mail:_khudson@hlpwlaw.com_
E-Mail:_chayes@hlpwlaw.com_
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of: Order Appointing Receiver in cases 05-1-6700 and 18-1-5244  by: ( ) Personal Service, ( x ) Statutory Electronic Service, ()Interoffice Mail or ( ) placing a copy in the United States mail in a properly addressed envelope with adequate postage thereon to:

> Christy, John - jchristy@swfllp.com
> Hudson, Kevin H - khudson@hpwlegal.com
> Dupree Jr., Hylton B - hdupree@dupree-lawfirm.com
> McBryan, Louis lmcbryan@mcbryanlaw.com
> Hayes, William chayes@hlpwlaw.com

This the 26 day of _____ May _____, 20 21

Brian Phillips
Judicial Administrative Assistant to
The Honorable Mary Staley Clark
Judge, Cobb Judicial Circuit