IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60349-RKA

SCOTT L. LEVENTHAL,

    Plaintiff,

v.

JOSEPH KAVANA,

    Defendant.

_____/

## DECLARATION OF F. BEAU HOWARD, ESQ.

The undersigned witness makes the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.

My name is Fletcher Beaumont Howard, Esq. I am the lead counsel for the Plaintiff Scott Leventhal ("Leventhal") in this matter. I am over the age of 18 and am otherwise competent to make this declaration. I have personal knowledge of the matters set forth below, unless otherwise stated.

2.

On April 12, 2021, Defendant Kavana served his first Requests for Production ("Requests") to Leventhal.

124069512.1

3.

Even before serving Leventhal's responses to Kavana's requests, I began coordinating with Mr. Leventhal, the outside IT vendor Veritisys for Trillist, and my firm's internal eDiscovery team to develop a plan and budget for retrieving discoverable, electronically stored information.

4.

Many of Kavana's requests initially related to documents belonging not to Mr. Leventhal, personally, but to The Trillist Companies, Inc., ("Trillist") in which Leventhal and Kavana are 50/50 shareholders.

5.

Hundreds of thousands of pages of Trillist's records are kept in hardcopy in organized filing cabinets at Trillist's headquarters in Atlanta, Georgia. On multiple occasions before this litigation even began, we invited Mr. Kavana and his attorneys to come to Trillist's headquarters to inspect and copy the records at issue. At one point, Mr. Kavana demanded to conduct a forensic audit of Trillist's business records, and we invited him into the office and asked what day his accountants would appear. He has repeatedly declined the opportunity to inspect Trillist's business records at Trillist's office.

6.

On May 11, 2021, before serving Leventhal's written responses to Kavana's Requests, I sent Kavana's counsel a detailed email explaining, not for the first time, that many of Trillist's records were kept in hardcopy at Trillist's office and invited Kavana to inspect them. I also attached photos showing a sampling of the kinds of documents Trillist kept in hardcopy.

My May 11, 2021 email states, in pertinent part:

> As for your allegation that you have been "jerked around for months," we disagree. You requested to audit the company's books and records, and you also requested duplication of the company's books and records. We offered access to complete financial and other records at the company's office for months. You have declined to come make the inspection. When you sent the notice of dispute, we again offered to meet with you in the company's office where we could provide you with access to the information Mr. Kavana wanted to review. You declined. We are still agreeable to host you in Atlanta for an inspection, and I think it would be less expensive for your client than continuing to try to obtain through litigation the same information that we are already trying to provide voluntarily.
>
> To be clear, Trillist maintains approximately 200,000 pages of hardcopy bank and other records that are all reasonably well organized by bank, entity, and/or vendor. Many of the paper records are odd sizes, contain handwritten notations, and are bound together. Mr. Kavana knows this because he has been in Trillist's office many times. A mass production would be time consuming and expensive, but review in person is simple and available. If, as you represented the other day, you particularly want to review the Smallwood Reynolds invoices, the hardcopy records are in Trillist's office organized in a single file. So is the work product that supports them, which you have seen consists of enormous design drawings that are bound together and would be extremely difficult and expensive to produce to you electronically. Take a look at the attached photos. If you have a targeted review that you want to make, a trip to Atlanta is inexpensive, and the relevant file folders can be put into your hands in a matter of minutes. If you want to send your copy service to collect copies of ALL of the relevant documents, we can facilitate that at your cost, although you have not previously done a good job of protecting the confidentiality of company's financial and business information. If you really just want to review a narrow subset of the vendor files, please identify them and I can probably get them scanned for you, depending on the volume. Trillist doesn't have unlimited resources to recreate business records for Mr. Kavana, but we are certainly willing to make some narrow reproductions, within reason. The point remains, you have been offered access, and you are still offered access.

> Respecting the bank records, the historical records are in filing cabinets in Trillist's office in Atlanta. Again, I attach a couple of relevant photos as examples….

7.

At 7:07 p.m. on May 11, 2021, the day before Leventhal's responses to Kavana's Requests were due, Kavana's counsel emailed me a letter leveling aggressive allegations against Mr. Leventhal. The letter asserted Mr. Kavana's purported fear that Mr. Leventhal would abscond with the funds from Trillist's sale of the Yoo on the Park property, and demanded that Mr. Leventhal agree to a "status quo protocol" to maintain the status quo and prevent the distribution of any proceeds from the sale of Yoo on the Park until the parties reach agreement as to how the funds should be distributed. The letter stated that if Mr. Leventhal would not agree to a consent order setting forth such a status quo protocol, Mr. Kavana would seek emergency relief from the Court, and demanded a response by the following day.

8.

At 1:02 p.m. on May 12, 2021, I sent an email responding to Kavana's counsel noting that we were working on Leventhal's discovery responses and would address the status quo issue when we could.

9.

Later that day, on May 12, 2021, Leventhal timely served his written responses and objections ("Responses") to Kavana's Requests. Leventhal's principal objection, relevant to virtually each of Kavana's Requests, was that the Requests sought documents belonging not to Leventhal personally, but to Trillist. While Leventhal has access to the requested Trillist documents, they do not belong to him, and Kavana's Requests inequitably attempt to shift the

124069512.1

burden of producing Trillist's documents to Leventhal. Because the documents belong to Trillist, Kavana should share in the costs required to produce them to him as a 50% shareholder. [*See* Doc. 58-5, Response to Requests 1, 3-23.]

10.

Leventhal's other common objection was that the Requests were overbroad and, as written, would require Leventhal to obtain, process, store, review, and produce tens of thousands of irrelevant documents, in some cases from numerous Trillist custodians. [*See* Doc. 58-5, Response to Requests 1, 3-10, 12, 17, 18, 20-26, 28, 29.]

11.

Consistent with my May 11, 2021 email, Leventhal's Responses indicated that Trillist documents responsive to many of Kavana's requests are kept by the company in hardcopy, organized in filing cabinets at Trillist's headquarters in Atlanta, Georgia. Leventhal's Responses to appropriate Requests described what categories of documents were available for inspection at Trillist's office and invited Kavana to inspect them. [*See* Responses to Requests 1, 3, 4, 5, 6, 7, 9, 11, 12, 15, 17, 20, 21, and 22.]

12.

At 6:03 p.m. that day, May 12, 2021, I sent a response letter to Mr. Kavana's counsel responding to Kavana's "status quo" letter. In addition to addressing some of Mr. Kavana's counsel's more incendiary allegations (including Kavana's allegations that Leventhal had been "denying" Kavana access to Trillist's bank accounts), I indicated that a proposed status quo agreement seemed workable and consistent with the parties' prior discussions. I asked to speak further on this subject with Kavana's counsel, Ms. Fehretdinov, the next morning. I also noted in

124069512.1

my letter that, although it would be time consuming, I expected that we would be able to obtain and produce certain categories of eDiscovery shortly. At the time, I did not know my estimation would be incorrect due to numerous complications yet to come.

13.

Shortly after 8:30 a.m. on May 13, 2021, Ms. Fehretdinov and I had a productive conference call related to the issues raised in the May 11, 2021 letter. On the call, the parties discussed in broad strokes the points to be contained in a proposed agreement to maintain the status quo, and Kavana's counsel agreed to circulate a draft agreement. Following the call, Ms. Fehretdinov emailed me confirming that Kavana would wait to move for emergency injunctive relief based on the understanding that Mr. Leventhal would provide additional bank account information the following day, and that the parties would work in good faith to reach a suitable status quo agreement.

14.

On May 14, 2021, Kavana's counsel sent an email requesting to meet and confer on Leventhal's objections to Kavana's requests at some point the following week. That day, I was traveling in the mountains of North Carolina with limited access to the internet. I was, however, able to email Kavana's counsel a schedule of bank accounts for Trillist and relevant TPKG Entities as agreed to avert Kavana's threat to file a motion for TRO. The ball was in Kavana's court to provide a first draft of a proposed Status Quo Order.

15.

On May 21, 2021, Kavana's counsel emailed me the first draft of a proposed consent status quo order. The same day, Kavana's counsel also sent an email requesting to meet and confer on

Leventhal's discovery objections. However, over the course of the next week, the discovery issue was put on the backburner as the parties were singularly focused on negotiating a consent status quo order, laboring under the threat that Kavana would file a motion for TRO if a consent order could not be agreed upon quickly.

16.

At approximately 1:02 p.m. on May 25, 2021, I emailed Kavana's counsel a redline "second draft" of the status quo order. At 2:30 p.m., I had a follow up call with Kavana's counsel to discuss Leventhal's proposed changes to the draft. At 4:22 p.m., Kavana's counsel sent back a redline "third draft" of the proposed status quo order.

17.

At 11:00 a.m. on May 26, 2021, counsel for the parties had a conference call to hammer out the final few points of disagreement and reach agreement on a final "status quo" order. At 5:33 p.m., Kavana's counsel emailed me a final revised version of the draft status quo order and declared it to be Kavana's best and final offer. I forwarded Kavana's latest draft to Mr. Leventhal and agreed to speak with Mr. Leventhal the following morning about final revisions.

18.

On May 26, 2021, the Superior Court of Cobb County, Georgia appointed a Receiver over Leventhal, effectively freezing all of Leventhal's funds and credit cards. I understand that Choate Construction Company, the plaintiff in the Cobb County litigation, moved for the appointment of the Receiver with the collaboration of Kavana and using Trillist's confidential business information that Kavana improperly and seemingly voluntarily filed openly on the docket of the Superior Court of Cobb County instead of taking efforts to maintain its confidentiality.

19.

On May 27, 2021, while we were dealing with the fallout of the appointment of the Receiver and simultaneously preparing a response to the latest draft status quo order, Kavana filed an emergency motion for a TRO.

20.

Now, Leventhal's central focus had to be responding to Kavana's "emergency" motion for TRO. On June 1, the Court held a status conference to set the briefing schedule for the Motion. Leventhal was ordered to respond to the emergency motion within 7 days, and a hearing was set for June 28. At the Status Conference, Leventhal again expressed his intention to participate in discovery, but raised his concern about being forced to bear the expense to produce Trillist's documents. [Doc. 58-1, 22:6-23:15.] Kavana falsely claims that, at the Status Conference, "the Court pressed Leventhal on why he could not comply with his discovery obligations." [Doc. 58, p. 2.] Kavana's characterization is misleading and inaccurate, as revealed by the transcript. [Doc. 58-1, 22:6-23:15.]

21.

On June 7, 2021 the parties held a good faith conference to discuss how to resolve the discovery dispute. At the conference, Kavana's counsel clarified that Kavana was only interested in communications and documents that could be obtained from Leventhal's email accounts present on his work computer—not all Trillist documents from multiple Trillist custodians—and that Kavana was primarily interested in communications from the last two years. Based on this clarification, Leventhal agreed to withdraw most of his relevance objections. After the conference, on June 8, 2021, Kavana sent Leventhal a letter narrowing the scope of their requests to 15

Requests (omitting Request Nos. 2, 5, 6, 14, 16, 18, 19, 20, 24, 26, 27, 28, and 29) and narrowing the scope of remaining Requests (Request Nos. 1, 3, 4, 7, 9, 10, 12). [Doc. 58-11.] Also on June 8, Kavana provided a list of proposed search strings that Kavana requested Leventhal run on his email accounts. On June 14, 2021, Leventhal confirmed by email that Leventhal would be withdrawing his relevance objections and would issue an amended set of responses.

22.

Over the course of June, while preparing for a TRO hearing in Miami on June 28, and also negotiating at length with opposing counsel on a consent order to obviate the need for a hearing, we worked to coordinate (a) Leventhal's third-party IT service, Vertisys, to collect the data from Leventhal's email accounts and (b) Fox Rothschild's internal eTech team to receive, process, host, and get the data into reviewable form. Because all of Leventhal's funds are frozen, these collection efforts had to be paused multiple times while we worked to determine how to pay for the threshold eDiscovery costs that had to be incurred before review could even begin.

23.

For example, after Vertisys collected more than 133 GBs of documents from Leventhal's email accounts, including the both the files present on Leventhal's work computer and those stored in a cloud-based archive and uploaded the data to Fox Rothschild's eTech team, Leventhal learned it would cost roughly $20,000.00 in computing costs for Leventhal's counsel to process and host the massive volume of data. To be clear, this was *just* the cost to host and process 133 GBs of data, *before* factoring in the costs of an attorney to review the documents for relevance and privilege. Leventhal's counsel worked at length with its eTech team to reach an alternative pricing arrangement that would allow the data to be processed and stored. We eventually reached such an

arrangement, but still had to make arrangements for the payment of the fees while Leventhal's funds remain frozen. Once this issue was resolved (a family member eventually agreed to pay the costs), the eTech team immediately began processing the data received by Vertisys, prioritizing the ~10.2 GBs of data obtained directly from Leventhal's work computer, which Kavana had expressed he was primarily interested in.

24.

At 3:41 p.m. on June 22, 2021, Kavana represented via email that "[u]ness we receive amended objections and a hit report by tomorrow at 5 p.m., we will be moving to compel. We have received permission from Judge Hunt's chambers to file our motion,[1] and will do so at 5 p.m. tomorrow if you do not supply a hit report and amend your objections." Over the next 24 hours, Leventhal worked diligently to meet Kavana's unilaterally imposed deadline.

25.

At 4:03 p.m. on June 23, 2021, Leventhal sent Kavana the requested "hit reports" generated by running Kavana's search strings on the emails retrieved from Leventhal's work computer. In the same email, Leventhal sent Kavana his amended discovery responses, which withdrew the discussed relevance objections.

26.

*One minute later*, at 4:04 p.m., and before Kavana's imposed 5:00 p.m. deadline, Kavana filed his Motion. Although it was almost certainly not intentional, the Motion nevertheless incorrectly states that, as of the time of filing, Leventhal had not provided search string hit reports

---

[1] If Kavana received permission from the Court to file his Motion, we were not privy to the communication with the Court. Leventhal would appreciate having his counsel participate in any

and had not amended his discovery responses to withdraw relevance objections. Of course, the Motion also failed to attach Leventhal's updated discovery responses and objections, and it focuses its argument on the withdrawn objections.

27.

The Motion also states that Leventhal had failed to produce a single document and had totally failed to participate in discovery in this case. This is inaccurate. Leventhal has provided access to bank accounts, and he has invited Kavana *on multiple occasions* to inspect and copy the ~200,000 pages of records kept in hardcopy at Trillist's offices. In response to Kavana's requests, Leventhal again stated that inspection would be allowed at Trillist's office as he was allowed to do under Rule 34(b)(2)(B).

28.

Once the issue of how Leventhal would bear the threshold eDiscovery costs without access to any of his funds was resolved, we have worked as quickly as possible to make a substantial production of eDiscovery. We anticipate that we will be making a production of more than 16,000 responsive documents by the end of the day tomorrow, July 1, 2021.

29.

Notably, since the appointment of the Receiver and the freeze on Leventhal's funds, we've been diligently working this case, including responding to the "emergency" TRO demanded by the Defendant, and there is currently no plan in place for the payment (timely or otherwise) of Fox Rothschild's attorneys' fees. Under the unprecedented financial circumstances present here, which are known to the Defendant, I believe we have acted in good faith to manage the Plaintiff's discovery obligations and assist the Plaintiff in complying with his discovery obligations.

124069512.1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 6/30/2021
DATE

Fletcher Beaumont Howard, Esq.